IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LITE-NETICS, LLC, | § § § | |
| Plaintiff, | § § | Civil Action No. 8:22-cv-00314 |
| v. | § § | |
| NU TSAI CAPITAL LLC d/b/a HOLIDAY BRIGHT LIGHTS, | § § § | **JURY TRIAL DEMANDED** |
| Defendants. | § § § | |

# LITE-NETICS' BRIEF IN SUPPORT OF ITS MOTION TO STAY PRELIMINARY INJUNCTION WITH REQUEST FOR EXPEDITED BRIEFING AND CONSIDERATION

Vincent J. Allen
Texas State Bar No. 24012209
J. Miguel Hernandez
Texas State Bar No. 24116512
CARSTENS, ALLEN & GOURLEY, LLP
7500 Dallas Pkwy, Suite 300
Plano, Texas 75024
(972) 367-2001
(972) 367-2002 Fax
allen@caglaw.com
hernandez@caglaw.com

**ATTORNEYS FOR PLAINTIFF
LITE-NETICS LLC**

I.     Introduction

Lite-Netics respectfully moves the Court to stay the Preliminary Injunction Order ("Preliminary Injunction") (Filing 43 at 69–71) and requests expedited briefing and consideration pending the resolution of Lite-Netics' appeal of that order (Filing 44). Lite-Netics requests that the Court order that any response to this motion be filed by November 8, 2022, and that the Court rule on this motion by November 10, 2022.

The Preliminary Injunction, among other things, requires Lite-Netics to take the affirmative action of sending the Order to "all persons who in the past have received the marketplace communications identified [in the order]." Filing 43 at 70. This affirmative relief exceeds the purpose of a preliminary injunction of maintaining the status quo, which alone is sufficient to stay the Preliminary Injunction.

Alternatively, the Court should grant Lite-Netics' requested stay because Lite-Netics respectfully maintains that it is likely to prevail on the merits, and the balance of harm favors a stay. Specifically, Lite-Netics will suffer irreparable harm without a stay because of the harm to its reputation and goodwill of its business. Further, the harm to its reputation at this time of the year is especially sensitive given that Christmas is rapidly approaching—the greatest driver of demand for Lite-Netics products. Without a stay of the preliminary injunction Lite-Netics will be irreparably harmed. Accordingly, Lite-Netics respectfully requests the Court stay the preliminary injunction.[1]

---

[1] For the sake of brevity and not to belabor the point, Lite-Netics incorporates by reference its Opposition to Nu Tsai's motion for Preliminary Injunction (Filing 32).

## II. Legal Standards

Courts use four factors to determine whether to issue a stay of an injunction pending appeal: (1) whether the party seeking the stay has demonstrated a strong likelihood of success on the merits; (2) whether the party seeking the stay will be irreparably injured without a stay; (3) whether a stay would substantially injure other parties; and (4) the public's interest. *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 607 (8th Cir. 2020) (citations omitted). The first factor is the most important. *Id.* These factors are essentially the same factors considered for granting injunctive relief. *Packard Elevator v. Interstate Commerce,* 782 F.2d 112, 115 (8th Cir. 1986); *See e.g.*, *Carson v. Simon*, 978 F.3d 1051, 1059 (8th Cir. 2020).

## III. Requiring Lite-Netics to communicate the order to its customers exceeds the scope of a preliminary injunction.

The Eighth Circuit has stated that the primary function of a preliminary injunction is to preserve the status quo until the district court can grant full effective relief. *Tumey v. Mycroft AI, Inc*., 27 F.4th 657, 664 (8th Cir. 2022) (quoting *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co*., 997 F.2d 484, 490 (8th Cir. 1993)). The Eighth Circuit has expressed apprehension for preliminary injunction orders requiring the defendant to take an affirmative action before the issue has been decided on the merits—considering such relief to exceed the purpose of a preliminary injunction. *See Tumey*, 27 F.4th at 664. Specifically, the Eighth Circuit has explained that preliminary injunction orders requiring a defendant to send notice to its customers indicating that it falsely labeled its products was an improper affirmative action. *See Sanborn Mfg.*, 997 F.2d at 490.

Here, the Court's Preliminary Injunction Order directs Lite-Netics to send the Order to its customers. *See* Filing 43 at 70. This order is nearly identical to the improper affirmative action

example referenced by the Eighth Circuit in *Sanborn*. Thus, the Court's Preliminary Injunction Order improperly orders Lite-Netics to take affirmative action.

Therefore, the Court should vacate its Preliminary Injunction Order, or alternatively, modify the Preliminary Injunction Order to remove the order requiring affirmative action.

## IV. Lite-Netics has a strong likelihood of success on the merits because it is immune from state tort claims under the *Noerr-Pennington* doctrine.

### A. Lite-Netics' infringement claims against Nu Tsai are not objectively baseless.

Nu Tsai does not contest that its Magnetic Cord literally infringes elements [1.0]–[1.2] of claim 1 of U.S. Pat. No. 7,549,779 ("the '779 Patent"), instead it only contests element [1.3]. Filing 32 at 7. Furthermore, Nu Tsai does not contest that its Magnetic Cord literally infringes elements [1.0]–[1.2] and [1.3.2] of claim 1 of U.S. Pat. No. 8,128,264 ("the '264 Patent"), instead it only contests element [1.3.1]. Filing 32 at 20. At the very least, these implicit concessions show the similarity between Nu Tsai's Magnetic Cord and Lite-Netics' '779 Patent and '264 Patent. This similarity shows that Lite-Netics' action is attempting to obtain a justifiable legal remedy and that it subjectively has good faith in pursuing this action.

The Court concluded that "specification estoppel" supported a finding that the Magnetic Cord does not infringe (literally or under equivalents) the '779 Patent, focusing on only a single magnet being disclosed in the embodiments of the specification. *See, e.g.*, Filing 43 at 35–36, 47. But the Federal Circuit has established that the specification does not need to disclose multiple elements for a claim stating "a[n] element" to cover "one or more elements." *See Convolve, Inc. v. Compaq Comput. Corp.*, 812 F.3d 1313, 1321 (Fed. Cir. 2016); (finding "a processor" to mean "one or more processors" (despite that the specification did not disclose multiple processors)); *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1343 (Fed. Cir. 2008) (finding that the specification only described "a pre-soaked fabric roll," yet the claim should not be limited to

3

mean a single roll); *Free Motion Fitness, Inc. v. Cybex Int'l*, 423 F.3d 1343, 1350 (Fed. Cir. 2005) (finding that despite the specification describing the cable as a "single cable" (and not otherwise disclosing multiple cable embodiments), the claims cover "one or more cables"); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1364–70 (Fed. Cir. 2002) (finding that "member" is construed to cover a "structure consisting of one or more components" despite the intrinsic evidence only depicting the member as "a single-component, straight-bar structure"); *See also, Rehco LLC v. Spin Master, Ltd.*, 759 F. App'x 944, 949 (Fed. Cir. 2019) (finding "a signal" to cover "one or more signals" (even though the patent—U.S. Patent 7,100,866— specification does not disclose multiple signals)).

Furthermore, "the mere depiction of a structural claim feature as unitary in an embodiment, without more, does not mandate that the structural limitation be unitary." *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1309 (Fed. Cir. 2005); *See Textron Innovations Inc. v. Am. Eurocopter Corp.*, 498 F. App'x 23, 30 (Fed. Cir. 2012) ("Unless the claims, the specification, or the prosecution history require that the particular component be a single, one-piece structure, a court normally will not read that limitation into the claim"); *See also*, *Atl. Constr. Fabrics, Inc. v. Dandy Prods.*, 64 F. App'x 757, 761 (Fed. Cir. 2003) (holding that the intrinsic evidence's consistent use of "an" or "a" to refer to "the filter" is not enough to limit the claims to a unitary structure). Accordingly, "specification estoppel" does not preclude a finding of infringement.

As Lite-Netics has demonstrated in its brief opposing Nu Tsai's motion for the preliminary injunction (Filing 32), Nu Tsai's Magnetic Cord and Magnetic Clip directly infringe the Asserted Patents either literally or alternatively under the doctrine of equivalents. Even if a fact finder ultimately determines that Nu Tsai's products do not infringe the Asserted Patents,

4

Lite-Netics' analysis demonstrates its good-faith belief that Nu Tsai's products infringe its patents.

Therefore, Lite-Netics has shown a strong likelihood of success on the merits because its claims are not objectively baseless.

### B. Lite-Netics' infringement claims against Nu Tsai are subjectively motivated to obtain a justifiable legal remedy.

To demonstrate bad faith overcoming *Noerr-Pennington* immunity, the suit must be objectively baseless and subjectively motivated by a desire to impose anticompetitive harm from the judicial process rather than obtain judicial relief. *ERBE Elektromedizin GmbH v. Canady Tech. LLC*, 629 F.3d 1278, 1291 (Fed. Cir. 2010).

Nu Tsai has not shown any evidence that Lite-Netics subjectively brought this suit in bad faith. As described above, the Accused Products and the Asserted Patents are at least appreciably similar to each other. Even if Lite-Netics is found to be unsuccessful in demonstrating infringement, it will still have *Noerr-Pennington* immunity for its subjective good-faith belief that Nu Tsai's products infringe the Asserted Patents. For at least these reasons, Lite-Netics maintains immunity under *Noerr-Pennington*.

## V. Lite-Netics will suffer irreparable injury without a stay.

### A. Restricting Lite-Netics' free speech will cause irreparable harm.

Lite-Netics will suffer irreparable harm because it is unable to communicate its patent rights in the marketplace. The Preliminary Injunction not only enjoins Lite-Netics' free speech regarding its communications about its patent rights but also infringes on Lite-Netics' free speech by forcing it to state to the effect that Nu Tsai does not infringe the Asserted Patents. This affirmative action mandated by the Preliminary Injunction will harm Lite-Netics' reputation and cause it to lose goodwill.

5

If Lite-Netics is forced to communicate to its customers that Nu Tsai does not infringe its patents, then it will come off as a bully and patent troll. The harm to its reputation at this time of the year is especially sensitive given that Christmas is rapidly approaching—the greatest driver of demand for Lite-Netics' products. Without a stay of the Preliminary Injunction Lite-Netics will be irreparably harmed.

### B. Lite-Netics' loss of reputation and goodwill is sufficient to establish irreparable harm.

The Court has recognized that loss of reputation and goodwill is a potentially viable theory of irreparable harm and is sufficient to satisfy the "irreparable harm" *Winter* factor. *See* Filing 26 at 28. In the patent context, the Federal Circuit has recognized that "impaired goodwill and competitive position" favor a patentee in a preliminary injunction analysis. *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1331 (Fed. Cir. 2018).

The Court has already acknowledged that "a situation like this involving the sale of a particularly seasonal product" favors a finding of irreparable harm. Filing 43 at 61 (citing *United Healthcare Ins. Co.*, 316 F.3d at 742). Here, the timing of the Preliminary Injunction forcing Lite-Netics to notify its customers at the height of the sales season for retailers to be purchasing stocks of holiday lights is reasonably likely to exacerbate the impact on Lite-Netics' reputation and goodwill, as customers may reasonably be expected to choose a different vendor if they have questions about Lite-Netics' ability to perform and if they are unaware that Nu Tsai's claim that it is not infringing Lite-Netics' patents is an empty one under the applicable law.

Furthermore, Lite-Netics maintains that the grant of the Preliminary Injunction will cause Nu Tsai to poach customers from Lite-Netics. Lite-Netics and Nu Tsai are competitors in the holiday lighting market. *See* Filing 48 at 4 (¶ 15). Nu Tsai sells practically identical magnetic holiday lights that significantly undercut Lite-Netics' prices. Filing 21-1 at 5 (¶ 13). Lite-Netics

brought this suit after its customers indicated that they would stop purchasing from Lite-Netics if it did not assert its patent rights. Filing 21-1 at 5 (¶ 14). If Lite-Netics is forced to communicate to its customers to the effect that Nu Tsai does not infringe its patents, then Lite-Netics' customers will have no reason to continue purchasing from Lite-Netics and will instead purchase from Nu Tsai.

## VI.   A stay of the preliminary injunction will not harm Nu Tsai.

A stay of the preliminary injunction would not harm Nu Tsai because it still has not shown that it has suffered any harm from the September communications. Nu Tsai cites to the declarations of its president as evidence of the worries and concerns of its customers about its ability to deliver products. However, Lite-Netics maintains that mere customer concern is not an "injury." Evidence of customers expressing concern that a potential future injunction could affect a party's ability to deliver products in the future is insufficient to show a likelihood of irreparable harm. *See Philips N.V. v. Thales Dis Ais USA LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022). Nu Tsai has not shown "any evidence that it lost customers, had customers delay purchases, or struggled to acquire new business because of the ongoing . . . proceedings." *Id*.

Additionally, if Lite-Netics can show that a reasonable litigant could believe that Nu Tsai has infringed the Asserted Patents, then Nu Tsai could not successfully show state tort claims from Lite-Netics because of Lite-Netics' immunity under the *Noerr-Pennington* doctrine. For example, the Federal Circuit in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n* found *Noerr-Pennington* immunity for a patent holder asserting its patent despite also finding that its patent was invalid. 776 F.3d 1343, 1350 (Fed. Cir. 2014). The court stated that the "Supreme Court has held that 'even unsuccessful but reasonably based suits advance some

First Amendment interests,' and therefore should receive protection under the First Amendment." *Id.* (quoting *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 532 (2002)).

Returning Lite-Netics' freedom of speech will not injure Nu Tsai because it has not shown any harm from the communications already made and could not recover against Lite-Netics either way.

## VII. The public interest favors staying the preliminary injunction.

The Federal Circuit has established that the public interest favors enforcing valid patents, especially when the patentee is practicing the claimed subject matter. *See Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015); *ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*, 694 F.3d 1312, 1341 (Fed. Cir. 2012).

Here, Lite-Netics has demonstrated that it is practicing the claimed subject matter of the Asserted Patents. *See e.g.*, Filing 21-1. Further, the Court has not made any findings that the Asserted Patents are invalid. The Preliminary Injunction will not serve the public interest because it will discourage patentees from pursuing their right to exclude others from practicing their valid inventions. Additionally, maintaining the Preliminary Injunction would further discourage patent holders from communicating their patent rights to others. If a patent holder believes that it will be enjoined from claiming infringement when it believes others are practicing its patent, then it will think twice before asserting its statutory patent rights.

## VIII. The Court Should Raise the Bond Amount for the Preliminary Injunction

The Court should increase the bond requirement for the preliminary injunction because the Court previously set the current amount as the bond for the TRO and because the preliminary injunction requires Lite-Netics to take affirmative action.

This Court has previously raised the bond amount for a preliminary injunction compared to a TRO. In *Canning Logistics Servs., LLC v. Baxter Bailey & Assocs.,* the Court did not require bond for the plaintiff's TRO but required a $350,000 bond for its preliminary injunction. No. 8:17CV116, 2017 U.S. Dist. LEXIS 75473, at *3–4, 9 (D. Neb. May 16, 2017). Nu Tsai's TRO only lasted two weeks yet required a bond of $1,000 as security. Filing 26 at 36. Now, Nu Tsai's preliminary injunction, absent a stay, will continue indefinitely—yet it does not need to provide any additional security for the costs and damages Lite-Netics might sustain if it is found to be wrongfully enjoined. Filing 43 at 67–68.

Furthermore, the TRO merely required Lite-Netics to refrain from making statements about Nu Tsai. Filing 26 at 36. The Preliminary Injunction requires Lite-Netics to take affirmative action by telling its customers to the effect that Nu Tsai does not infringe the Asserted Patents. Filing 43 at 70. As argued above, this could cause irreparable harm to Lite-Netics' reputation and goodwill.

Because the damages Lite-Netics might sustain from the Preliminary Injunction are clearly greater than from the TRO, Lite-Netics respectfully asks the Court to raise the bond requirement to an amount the Court deems reasonable.

## IX. Conclusion

Lite-Netics has demonstrated that the Court should stay the Preliminary Injunction because it goes beyond the purpose of protecting the status quo by ordering affirmative action. Alternatively, the Court should stay the Preliminary Injunction because Lite-Netics has demonstrated a strong likelihood of success on the merits by showing Nu Tsai's infringement of the Asserted Patents; Lite-Netics will be irreparably injured without a stay; a stay would not substantially injure Nu Tsai; and because the public interest favors granting a stay of the

9

injunction. Additionally, the Court should increase the bond amount for the Preliminary Injunction.

Dated: November 3, 2022                     Respectfully submitted,


                                            /s/Vincent J. Allen
                                            Vincent J. Allen
                                            Texas State Bar No. 24012209
                                            J. Miguel Hernandez
                                            Texas State Bar No. 24116512
                                            CARSTENS, ALLEN & GOURLEY, LLP
                                            7500 Dallas Pkwy, Suite 300
                                            Plano, Texas 75024
                                            (972) 367-2001
                                            (972) 367-2002 Fax
                                            allen@caglaw.com
                                            hernandez@caglaw.com

                                            **ATTORNEYS FOR PLAINTIFF**
                                            **LITE-NETICS LLC**

## Certificate of Service

The undersigned attorney certifies that a true and correct copy of the foregoing document was served via CM/ECF electronic service to all counsel of record on the 3rd day of November 2022.

                                            /s/Vincent J. Allen
                                                Vincent J. Allen

10

## Certificate of Compliance

Pursuant to NECivR 7.1(d)(3), the undersigned attorney certifies that this brief complies with the requirements of NECivR 7.1(d)(1). Relying on the word count tool in Microsoft Word for Microsoft 365, this document contains 2,946 words—including the caption, headings, footnotes, and quotations.

<i>/s/Vincent J. Allen</i><br>
Vincent J. Allen