IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LITE-NETICS, LLC,<br><br>                    Plaintiff,<br><br>        vs.<br><br>NU TSAI CAPITAL LLC,<br><br>                    Defendant. | **8:22CV314**<br><br><br>**MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS** |

This case involves claims by plaintiff/counterdefendant Lite-Netics, LLC, (Lite-Netics) of infringement of its patents for magnetic holiday light fixtures by defendant/counterclaimant Nu Tsai Capital LLC, d/b/a Holiday Bright Lights (HBL). Filing 31. This case is now before the Court on HBL's Renewed Rule 12(b)(6) Motion to Dismiss Lite-Netics's Amended Complaint. Filing 75. This Motion follows a decision of the Federal Circuit Court of Appeals vacating this Court's order granting a preliminary injunction to HBL—based on what this Court found were objectively baseless that statements Lite-Netics made to customers accusing HBL of infringing Lite-Netics's patents—and remanding the case for further proceedings consistent with its opinion. Filing 70. One of the parties' disputes is the extent to which the Federal Circuit's opinion is determinative of the sufficiency of Lite-Netics's pleading of patent infringement. Although the Court does not find the Federal Circuit's decision determinative, it does find that decision instructive. Thus, for the reasons stated below, HBL's Renewed Rule 12(b)(6) Motion to Dismiss is denied.

## I.   INTRODUCTION

The Court wrote exhaustive decisions on HBL's Motion for Temporary Restraining Order and on HBL's Motion for Preliminary Injunction. *See* Filing 26; Filing 43. In contrast, a less-detailed decision is required on HBL's Renewed Rule 12(b)(6) Motion to Dismiss because of the Court's prior rulings and the comparative simplicity of the legal analysis that the Court finds leads

1

to the proper disposition of the Motion now before the Court. Nevertheless, some factual and procedural background is appropriate to put in context the Court's analysis of HBL's Motion.

## A. Factual Background

### 1. The Asserted Patents

Lite-Netics alleges that it sells magnetic light strands used to illuminate homes and businesses during the holidays pursuant to U.S. Patent No. 7,549,779 (the '779 Patent) and U.S. Patent No. 8,128,264 (the '264 Patent) (collectively, the Asserted Patents), both of which describe the invention as "a light fixture assembly." Filing 31 at 1 (¶ 2), 3 (¶ 10); Filing 31-1 at 2 ('779 Patent, abstract); Filing 31-2 at 2 ('264 Patent, abstract). The light fixture assembly has "[a] neodymium disc magnet" ('779 Patent) or "[a] strong magnet" ('264 Patent) "embedded in the base, thereby allowing the assembly to be mounted magnetically to metal surfaces." Filing 31-1 at 2 ('779 Patent, abstract); Filing 31-2 at 2 ('264 Patent, abstract). Lite-Netics alleges that "[t]he patented products provide users with an easy, damage-free installation and effortless take-down." Filing 31 at 1 (¶ 2).

In its First Amended Complaint, Lite-Netics provides the following figure as an example of one embodiment of a magnetic light fixture disclosed in the Asserted Patents as well as a photograph of its actual product:



FIG. 9A



Filing 31 at 4 (¶ 13) (figure), 5 (¶ 17) (photograph). Referring to Fig. 9A, Lite-Netics explains, "The magnetic light fixture includes a socket (8) configured to couple with a light bulb (7) at a first end and a base (3) at a second end. A magnet (1) is configured to be embedded in the base (3)." Filing 31 at 3 (¶ 13). The Asserted Patents explain that the light fixture assembly also includes "[a] plastic protective coating **2**," "two retaining clips **5**," an optional "side clip **6**," and "a copper conductor **10**." Filing 31-1 at 7 ('779 Patent at 3:36–37, 3:46, 3:54); Filing 31-2 at 6 ('264 Patent at 3:57–59, 3:62, 4:1).

Claim 1, the only independent claim of the '779 Patent, claims the following:

> 1. A light fixture assembly, comprising:
>
> (a) a light bulb socket with an opening at the first end for accommodating a light bulb and at least one opening at the second end, wherein the socket includes a conductor that places a light bulb inserted into the first end in electrical contact with electrical wires inserted through the socket;
>
> (b) a base attached to the second end of the light bulb socket; and
>
> (c) a neodymium magnet embedded in the base wherein said magnet has a pull strength of at least five pounds.

Filing 31-1 at 7 ('779 Patent, 4:52–62).

The independent claims of the '264 Patent, Claims 1 and 17, claim the following:

> 1. A light fixture assembly, comprising:
>
> a lightbulb socket with an opening at a first end for accommodating a lightbulb and a second opening for insertion of electrical wires, wherein the socket includes two conductors that places a lightbulb inserted into the first end in electrical contact with said electrical wires;
>
> a base integrally attached to the second end of the lightbulb socket; and
>
> a magnet embedded in the base such that said magnet does not protrude outside of said base, wherein said magnet has sufficient pull force to hold said light fixture assembly to a ferrous object while said light fixture assembly is connected to a string of other light fixture assemblies.
>
> * * *

3

17. A method for installing a string of light fixture assemblies, said method comprising the steps:

> selecting a location containing a ferrous metal surface; and

> attaching at least one of said light fixture assemblies to said ferrous metal surface by touching a base of said at least one of said [sic] light fixture assemblies to said ferrous metal surface, wherein said base is integrally attached to an end of the light bulb socket and wherein a magnet is embedded in said base such that said magnet does not protrude outside of said base, wherein said magnet has sufficient pull force to hold said at least one of said [sic] light fixture assemblies to said ferrous metal surface while said at least one of said [sic] light fixture assemblies is connected to said string of other light fixture assemblies.

Filing 31-2 at 8 ('264 Patent, 5:20–32, 6:19–32).

### 2. *The Accused Devices*

Lite-Netics alleges that HBL is marketing two products that infringe the Asserted Patents: a "Magnetic Cord" and a "Magnetic Clip." Filing 31 at 6 (¶ 21). HBL alleges that it has a patent of its own, U.S. Patent No. 11,333,309 (the '309 Patent), for its Magnetic Cord design. Filing 48 at 4 (¶ 14). HBL also contends that its Magnetic Clip is a separate "slip on" device that is not a "light fixture assembly" as claimed in the Asserted Patents. Filing 48 at 2–3 (¶ 8).

HBL includes the '309 Patent as Exhibit H to its original Counterclaims. Filing 11-8. One image of the patented product from the '309 Patent and a photo of the actual Magnetic Cord from Lite-Netics's Complaint are shown below:





Filing 11-8 at 2 ('309 Patent, cover page image); Filing 31 at 6 (¶ 21) (photograph of device). The

'309 Patent identifies the '779 Patent among prior art. Filing 11-8 at 2. The '309 Patent explains

that "two magnets **20** and **50** [with **50** not shown in the image above] protrude from the base of a

socket **10**," with "a pocket **30** shaped to receive a magnet **50**" and "drain holes **40** for the socket

**10**." Filing 11-8 at 7 ('309 Patent, 2:17–18, 2:24–25, 2:65). The '309 Patent explains further that

"a channel between magnets **20** and **50** further helps the circulation of air when socket **10** is

magnetically fixed to a surface." Filing 11-8 at 7 ('309 Patent, 2:59–61).

     Lite-Netics's First Amended Complaint includes the following photograph of HBL's

Magnetic Clip with a light fixture, and Lite-Netics includes with the Second Declaration of Shawn

Genenbacher the following photograph of unmounted HBL Magnetic Clips:

 

Filing 31 at 7 (¶ 21) (image of mounted clip); Filing 33-1 at 11 (¶ 19) (colored arrows inserted by

Mr. Genenbacher omitted).

### B. Procedural Background

*1.   Proceedings in this Court*

     Lite-Netics filed its original Complaint alleging that HBL was infringing both the Asserted

Patents. Filing 1. HBL responded by filing a Motion to Dismiss, Filing 9, and a Counterclaim (but

no Answer), Filing 11, in addition to the Motion for Temporary Restraining Order and Preliminary

Injunction, Filing 12, mentioned at the beginning of this decision. HBL's original Motion to

Dismiss was mooted when Lite-Netics filed its First Amended Complaint. Filing 31; *see also*

Filing 36 (order denying the motion as moot without prejudice to reassertion as to the First Amended Complaint). Lite-Netics's First Amended Complaint remains its operative pleading.

Count I of Lite-Netics's First Amended Complaint asserts that HBL has directly infringed, induced infringement, and contributed to infringement of one or more claims of the '779 Patent. Filing 31 at 8-10 (¶¶ 27–39). Count II of its First Amended Complaint again asserts direct infringement, inducing infringement, and contributing to infringement by HBL of one or more claims of the '264 Patent. Filing 31 at 10–12 (¶¶ 40–52). One of the principal differences between the original Complaint and the First Amended Complaint is that the latter expressly alleges that HBL's direct infringement was "under literal infringement, the doctrine of equivalents, or both," where its original Complaint contained no allegations of infringement under the doctrine of equivalents. Filing 31 at 8 (¶ 29); Filing 31 at 10 (¶ 42). Although HBL eventually filed an Amended Counterclaim, Filing 48, it still has not filed an Answer.

Lite-Netics's First Amended Complaint did not change the basis for HBL's Motion for Preliminary Injunction. that Motion was based on HBL's original counterclaims of tortious interference with business relationships and defamation. Filing 12 at 4; Filing 12 at 6. These counterclaims were based on letters or emails Lite-Netics sent to HBL's clients and customers accusing HBL by name of infringing the Asserted Patents. Filing 11 at 6–7 (¶ 26); Filing 11-7 (Counterclaim, Exhibit G). Three days after a hearing on the Motion for Preliminary Injunction, the Court granted HBL's Motion for Preliminary Injunction on the terms and conditions set out in an attached Preliminary Injunction. Filing 43.

The Preliminary Injunction was based on the following preliminary findings:

- that defendant/counterclaimant HBL has made sufficient showing that plaintiff/counter-defendant Lite-Netics, LLC (Lite-Netics) has engaged in tortious interference with business relations and prospective business relations, as claimed in Count IV of HBL's Counterclaim in this action, and has engaged

6

in defamation, as claimed in Count V of HBL's Counterclaim, by sending false, baseless, and defamatory communications to businesses that Lite-Netics knew had business relationships with HBL, falsely accusing HBL of tortious conduct, that is, patent infringement and "copying" of Lite-Netics's products; threatening to include any known company using or reselling the HBL products as co-defendants in this lawsuit contrary to applicable law; and defaming HBL with false and baseless accusations of patent infringement and copying;

- that HBL has shown a threat of irreparable harm to its reputation and goodwill caused by Lite-Netics's conduct that is not merely speculative;

- that the balance of harms favor issuance of a preliminary injunction, because Lite-Netics will be free to pursue the marketing of its products by any other means, just not by such deceptive means, while HBL has established that it will suffer irreparable harm in the absence of a preliminary injunction; and

- that the public interest favors enjoining false statements to customers and not inhibiting choice in the marketplace, just as it favors enjoining other kinds of conduct that would distort the marketplace.

Filing 43 at 69–70.

Based on these preliminary findings, the Court ordered the following:

IT IS THEREFORE ORDERED that, pending disposition of this case or subsequent court order, Lite-Netics, along with its officers, directors, shareholders, and other agents, is preliminarily enjoined from making statements via letters, emails, Facebook, Twitter, or any other social media, mass media, direct marketing, robocalls, press releases, blogs, websites or otherwise suggesting "copying" by HBL, suggesting HBL customers will be burdened as additional defendants in this or any lawsuit, or suggesting that HBL is a patent infringer.

Filing 43 at 70. Although the Preliminary Injunction was later amended, the amendment did not alter these provisions. Filing 60 at 1–2.

2. *Lite-Netics's Interlocutory Appeal*

Lite-Netics took an interlocutory appeal of the Court's preliminary injunction order. Filing 44. The same day Lite-Netics filed its interlocutory appeal HBL filed its second Motion to Dismiss. Filing 45. The Court entered an Order that among other things denied HBL's second Motion to Dismiss without prejudice to reassertion if desired within fourteen days of the disposition by the

7

Federal Circuit Court of Appeals of Lite-Netics's interlocutory appeal and stayed all proceedings in this Court pending disposition of that interlocutory appeal. Filing 69 at 4.

The Federal Circuit Court of Appeals vacated this Court's preliminary injunction order and remanded the case for further proceedings consistent with its opinion. Filing 70 at 23, *published at Lite-Netics, LLC v. Nu Tsai Capital, LLC*, 60 F.4th 1335 (Fed. Cir. 2023).[1] The Federal Circuit observed that "HBL's state-law claims here . . . can survive federal preemption only to the extent that those claims are based on a showing of 'bad faith' action in asserting infringement." *Lite-Netics*, 60 F.4th at 1343 (internal quotation marks and citations omitted). The Federal Circuit explained,

> [A] bad faith standard cannot be satisfied in the absence of a showing that the claims asserted were objectively baseless. A patent-infringement allegation is objectively baseless only if no reasonable litigant could realistically expect success on the merits.

*Lite-Netics*, 60 F.4th at 1343 (internal quotation marks and citations omitted). However, the Federal Circuit held "that the district court abused its discretion in issuing the preliminary injunction because the applicable speech-protective legal standards [we]re not met." 60 F.4th at 1337–38.

### 3.    *Post-Remand Proceedings*

After mandate issued on the Federal Circuit's judgment, this Court entered an Order lifting a stay on proceedings and directed that HBL file a renewed Motion to Dismiss, with any opposition and/or reply to be filed in accordance with applicable local rules. Filing 74 at 2. HBL's renewed Motion to Dismiss and the parties' briefing followed in due course. *See* Filing 75; Filing 76; Filing 79; Filing 80.

---

[1] The Court will cite the Federal Circuit's published decision in the remainder of this ruling.

## II.  LEGAL ANALYSIS

In its renewed Motion to Dismiss, HBL seeks dismissal of all claims in Lite-Netics's First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. In a patent case, the Federal Circuit reviews a ruling on a Rule 12(b)(6) motion to dismiss under the law of the regional circuit. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 702 (Fed. Cir. 2023). Thus, the Court's legal analysis begins with a summary of Rule 12(b)(6) standards under Eighth Circuit law.

### A.  Rule 12(b)(6) Standards

The typical grounds for Rule 12(b)(6) motions are the insufficiency of the factual allegations offered to state claims. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner,* 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). In contrast, "'[w]here

9

a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth Circuit Court of Appeals has cautioned that "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021).

## B.  The Impact of the Federal Circuit's Decision

As mentioned at the outset of this decision, one of the parties' disputes is the extent to which the Federal Circuit's opinion is determinative of the sufficiency of Lite-Netics's pleading of patent infringement. The Court will consider that issue first.

### 1.    *The Parties' Arguments*

HBL argues, "the Federal Circuit left the door wide open for this Court to deem all of Lite-Netics' claim construction and infringement positions profoundly mistaken, reaching and deciding only that those positions on one of the two patents-in-suit (not both) had enough support to avoid the 'objectively baseless' label." Filing 76 at 1. HBL adds that the Federal Circuit's decision should not prevent complete dismissal of Lite-Netics's case, based on a full claim construction and claim

10

comparison that the Federal Circuit always expected this Court to perform. Filing 76 at 1. More specifically, HBL argues that the Federal Circuit decision was entered in the context of a preliminary injunction, where the "law of the case" doctrine generally does not apply, and the Federal Circuit expressly noted that it did not "finally resolv[e] the underlying disputes about claim construction, prosecution history estoppel, or other issues." Filing 76 at 4 (citing *Lite-Netics*, 60 F.4th at 1345). HBL also argues that the Federal Circuit's decision was not on the merits of the legal issues raised in HBL's current Motion because that court only considered "objective baselessness" of the infringement allegations under a First Amendment standard. Filing 76 at 4. Moreover, HBL argues, the Federal Circuit did not consider issues related to infringement of the '264 Patent at all. Filing 76 at 5.

In contrast, Lite-Netics contends that because the Federal Circuit found Lite-Netics's suggested claim constructions were reasonable, and this Court must draw all reasonable inferences in favor of Lite-Netics on HBL's Motion to Dismiss, Lite-Netics has plausibly stated claims for patent infringement under the "law of the case." Filing 79 at 11. Lite-Netics contends that the Federal Circuit concluded that HBL had not demonstrated a "fair chance" of success of prevailing on its contention that Lite-Netics's patent infringement arguments are objectively baseless, so that HBL's reiteration of its claim constructions do not warrant dismissal of Lite-Netics's claims. Filing 79 at 11–12. Indeed, Lite-Netics contends that the Court must interpret the claims consistent with the Federal Circuit's opinion before a final claim construction is made. Filing 79 at 12.

In reply, HBL argues that Lite-Netics "misapprehends" the holding of the Federal Circuit, which was merely that Lite-Netics's assertion of infringement of the '779 Patent was not "objectively baseless" in the context of a preliminary injunction. Filing 80 at 1. HBL also points

11

out that the Federal Circuit did not opine at all on HBL's argument that the Asserted Patents are

indefinite, which is also one of HBL's grounds for dismissal. Filing 80 at 1.

2.    *The Federal Circuit's Decision on the Preliminary Injunction Does Not
      Dictate the Result on the Motion to Dismiss*

On the issue of the impact of the Federal Circuit's decision on the interlocutory appeal of

this Court's preliminary injunction order, HBL has the better argument. The Federal Circuit made

clear that "First Amendment principles that are part of the patent-preemption doctrine" were at

issue, rather than the question of whether the Asserted Patents were actually infringed. *See Lite-

Netics*, 60 F.4th at 1344. The court explained that it was considering whether Lite-Netics's

infringement allegations concerning the '779 patent were "objectively baseless" and expressly

stated that it "need not and d[id] not address other issues." *Id.* Indeed, the Federal Circuit stated,

"For example, we do not address infringement of the '264 patent," with its requirement that the

magnet 'does not protrude outside of said base,'" and acknowledged that "a claim construction

dispute exists" over the meaning of "protrude outside of." *Id.* at n.2 (quoting '264 Patent, 5:28–

29). The Federal Circuit also emphasized the difference between an "incorrect allegation of patent

infringement" and an "objectively baseless" one. *Id.* at 1344 (also explaining that a patentee may

press patent rights even though the patentee may misconceive what those rights are).

Contrary to Lite-Netics's assertions, *see* Filing 79 at 10, the Federal Circuit's determination

that this Court abused its discretion as to three specific conclusions concerning objectively baseless

allegations of infringement of the '779 Patent[2] does not impose any construction of the pertinent

limitations of the '779 Patent on this Court as "law of the case." *See Momenta Pharms., Inc. v.*

---

[2] Those three faulty findings about objectively baseless allegations of infringement according to the Federal
Circuit were the following: "(i) that the claimed 'magnet' [in the '779 Patent] is limited to a single magnet with a
unitary structure; (ii) that Lite-Netics is estopped from asserting infringement under the doctrine of equivalents; and
(iii) that the claim terms 'attached' and 'integrally attached' must be 'something more than touching.'" *Lite-Netics*,
60 F.4th at 1345.

*Teva Pharms. USA Inc.*, 809 F.3d 610, 619 (Fed. Cir. 2015) ("For the [law-of-the-case] doctrine to apply, the issue must have actually been decided. Findings of fact and fact-intensive conclusions of law made by a court in the preliminary injunction context are not binding."). Instead, the Federal Circuit made clear on the appeal of this Court's preliminary injunction order,

> For reasons we will set out, we conclude that Lite-Netics's position on all three of those disputes has not been shown, at this stage of the litigation (before, *e.g.*, full claim-construction proceedings or possible expert reports on infringement), to be objectively baseless. That conclusion requires vacatur of the preliminary injunction, without finally resolving the underlying disputes about claim construction, prosecution history estoppel, or other issues.

*Lite-Netics*, 60 F.4th at 1345. This statement makes clear that the Federal Circuit made no binding claim constructions, no conclusions about prosecution history estoppel, nor conclusions on infringement.

It is equally apparent that the Federal Circuit did not address the issue of the definiteness or indefiniteness of the Asserted Patents, which is now before the Court on HBL's Motion to Dismiss. *See* Filing 76 at 16–17, 30–33. The words "definite" and "indefinite" and their cognates do not even appear in the Federal Circuit's decision nor does any citation to the pertinent statutory provision, 35 U.S.C. § 112. *See generally Lite-Netics*, 60 F.4th 1335.

Thus, this Court will consider HBL's Motion to Dismiss unfettered by the Federal Circuit's decision on the Court's preliminary injunction order. "Unfettered" does not mean that this Court will disregard the guidance that decision may provide on the issues now presented, however.

### C.  The Sufficiency of the Pleading of Infringement

Although the focus of the Federal Circuit on appeal of this Court's preliminary injunction order was whether Lite-Netics's claims of patent infringement are "objectively baseless," the first focus of HBL's Motion to Dismiss is whether Lite-Netics has adequately pleaded claims of patent infringement. The parties' arguments on that question are by and large reiterations of their

positions on claim construction asserted in the litigation of the preliminary injunction motion. The Court finds that a summary of the parties' arguments concerning infringement of the '779 Patent by HBL's Magnetic Clip illustrates this point.

       *1.*     *A Sample of the Parties' Arguments Concerning Infringement*

       HBL argues that the First Amended Complaint fails to plead plausible facts supporting a claim that HBL's Magnetic Clip, when used by end users, infringes the '779 Patent. Filing 76 at 17 (referring to infringement of both Asserted Patents). HBL points out that Claim 1 of the '779 Patent requires "an assembly base attached to the second end of the light bulb socket," but the First Amended Complaint shows that the when the Magnetic Clip is in use it is not a light fixture assembly base, does not "attach" to any part of the light fixture assembly that might qualify as a "second end," and is the exact type of item disclaimed as inferior in the patent specification. Filing 76 at 18. HBL argues that Lite-Netics's position is ultimately wrong, in light of proper claim construction. Filing 76 at 17.

       Lite-Netics argues that the Magnetic Clip infringes indirectly at least claim 1 of the '779 Patent. Filing 79 at 34. Lite-Netics argues that the Magnetic Clip is a base that attaches to the second end of the light fixture. Filing 79 at 35. Indeed, Lite-Netics contends that the Federal Circuit recognized that its case law indicated that "attach" is broad enough to cover connecting without fastening. Filing 79 at 35. Lite-Netics argues that HBL has failed to show that a special definition deviating from a broad meaning should be applied to the '779 Patent. Filing 79 at 36. Lite-Netics also contends that the Federal Circuit concluded that the '779 Patent did not disclaim the Magnetic Clip because the prior art distinguished in the '779 patent could reasonably be seen to be different from the Magnetic Clip. Filing 79 at 37.

2.     *The Court Is Not Conducting a Full Claim Construction and Claim Comparison*

The parties' arguments based on claim construction miss the point. As the Federal Circuit has explained,

> An infringement analysis requires two steps. *Clare v. Chrysler Grp. LLC*, 819 F.3d 1323, 1326 (Fed. Cir. 2016). First, the court construes the asserted claims. Claim construction is a question of law that may involve underlying factual questions. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 332, 135 S.Ct. 831, 190 L.Ed.2d 719 (2015). Second, the court determines whether the accused product meets each limitation of the claim as construed, which is a question of fact. *Wright Med. Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1443 (Fed. Cir. 1997).

*Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1306 (Fed. Cir. 2020). These are the steps required to decide the question of infringement, but they are not the requirements to determine whether pleadings of infringement are sufficient. The fundamental problem with HBL's focus on claim construction and claim comparison at the motion to dismiss phase of the litigation is that the Court is not at this time conducting a full claim construction and claim comparison, as HBL seems to suggest. Filing 76 at 1. Lite-Netics also misses the mark when it suggests that a final determination of the sufficiency of allegations of infringement cannot be made before claim construction. Filing 79 at 10. Rather, a final determination of infringement cannot be made before claim construction but a determination of the sufficiency of the pleading of infringement does not require claim construction.

That is one of the lessons this Court takes from the Federal Circuit's decision vacating this Court's preliminary injunction order. HBL argued and this Court believed at the preliminary injunction stage that a determination of "objective baselessness" of allegations of infringement required a detailed—albeit preliminary—construction of the patent claims, including consideration of specification estoppel and prosecution history estoppel. However, the Federal Circuit made the determination that Lite-Netics's allegations of infringement were not objectively baseless "without

finally resolving the underlying disputes about claim construction, prosecution history estoppel, or other issues." *Lite-Netics*, 60 F.4th at 1345. Again, the question at the pleading stage is "whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co.*, 27 F.4th at 1364 (quoting *Braden*, 588 F.3d at 594). This is more akin to the question of whether an allegation of infringement is "objectively baseless" than it is to the question of whether there is actual infringement based on a full claim construction. To paraphrase the Federal Circuit, an incorrect allegation of patent infringement is not necessarily so implausible as to fail to state a claim. *Lite-Netics*, 60 F.4th at 1344 ("An incorrect allegation of patent infringement is not necessarily objectively baseless."). At this point, on a pre-answer, pre-discovery, pre-*Markman* hearing, and pre-claim construction motion to dismiss for failure to state a claim, the question of plausibility of the allegations of patent infringement can be decided "without finally resolving the underlying disputes about claim construction, prosecution history estoppel, or other issues." *Id.* at 1345.

The Court's view is confirmed by the Federal Circuit's discussion of the adequacy of pleading of patent infringement in *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342 (Fed. Cir. 2021). In that case, the Federal Circuit explained, "A plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8 LLC*, 4 F.4th at 1352. The Federal Circuit explained, "Instead, it is enough that a complaint place the alleged infringer on notice of what activity . . . is being accused of infringement." *Id.* (internal quotation marks and citations omitted). The court also cautioned that "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.* at 1353.

3.      *Lite-Netics's Allegations of Patent Infringement Are Plausible, Even If They Are Ultimately Determined to be Wrong*

The Court finds that Lite-Netics has sufficiently pleaded infringement of the Asserted Patents by both HBL's Magnetic Cord and HBL's Magnetic Clip under the applicable standards articulated in *Far E. Aluminium Works Co.*, 27 F.4th at 1364, and *Bot M8 LLC*, 4 F.4th at 1352–53. Sufficiently detailed factual allegations to place HBL on notice of what features of its products are being accused of infringement are presented in Exhibit 3 to the First Amended Complaint. Filing 31-3. Exhibit 3 identifies specific features of the accused products that are similar to claimed elements of the Asserted Patents. *Cf. Bot M8 LLC*, 4 F.4th at 1356 ("[T]he [First Amended Complaint] identifies specific error messages that are displayed by the PS4 when faults are detected" and "[t]hese allegations give rise to a reasonable inference that the fault inspection program is completed before a game starts," as claimed in the patents-in-suit).

Specifically, Exhibit 3 is incorporated into Count I of the First Amended Complaint as demonstrating "without limitation as to other claims, infringement of Claim 1" of the '779 Patent. Filing 30 at 9 (¶ 38). Exhibit 3 identifies features of the Magnetic Cord that plausibly correlate to claimed features of the '779 Patent. It identifies features that plausibly correlate to a light bulb socket with an opening at the first end for accommodating a light bulb and at least one opening at the second end. Filing 31-3 at 2. It identifies features that plausibly correlate to the socket including a conductor that places a light bulb inserted into the first end in electrical contact with electrical wires inserted through the socket. Filing 31-3 at 3. It identifies features that plausibly correlate to a base attached to the second end of the light bulb socket. Filing 31-3 at 4. It identifies features that plausibly correlate to a neodymium magnet embedded in the base wherein said magnet has a pull strength of at least five pounds. Filing 31-3 at 5–7. Similarly, as to the '779 Patent, Exhibit 3 identifies features of the Magnetic Clip that, when used with a light bulb socket, plausibly correlate

to a base attached to the second end of the light bulb socket. Filing 31-3 at 9. It also identifies features that plausibly correlate to a neodymium magnet embedded in the base wherein said magnet has a pull strength of at least five pounds, all as claimed in Claim 1 of the '779 Patent. Filing 31-3 at 10–11. Exhibit 4 is also incorporated into the First Amended Complaint as demonstrating "without limitation as to other claims, infringement of Claims 1 and 2" of the '264 Patent. Filing 30 at 12 (¶ 46). Exhibit 4 also identifies features of the accused products that correlate to claimed features of the '264 Patent. Filing 31-4 at 2–11.

As the Federal Circuit reiterated in Bot M8 LLC, a patent holder "need not 'prove its case at the pleading stage.'" *Bot M8 LLC*, 4 F.4th at 1356 (quoting *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)). The allegations in the First Amended Complaint, and Exhibit 3 and 4 incorporated into it, are sufficient to make Lite-Netics's allegations of infringement plausible. *Far E. Aluminium Works Co.*, 27 F.4th at 1364; *Bot M8 LLC*, 4 F.4th at 1352–53. This is true even if full claim construction might demonstrate that those allegations are wrong, in light of resolution of the underlying disputes about claim construction, prosecution history estoppel, or other issues. *Cf. Lite-Netics*, 60 F.4th at 1345.

HBL's Renewed Motion to Dismiss is denied as to failure of Lite-Netics's First Amended Complaint to state claims of patent infringement.

### D. Sufficiency of the First Amended Complaint to Overcome Indefiniteness

HBL also argues that the First Amended Complaint should be dismissed for failure to state a claim because Claim 1 of the '779 Patent and Claims 1 and 17 of the '264 Patent are indefinite under 35 U.S.C. § 112. Filing 76 at 30. HBL argues that this is a separate and independent ground for dismissal, whatever the Court's conclusion are on allegations of infringement. Filing 76 at 31. The Court turns to that independent challenge to the First Amended Complaint.

1.      *The Parties' Arguments*

HBL argues that Claim 1 of the '779 Patent is indefinite because it includes a claim parameter of "wherein said magnet has a pull strength of at least five pounds," but it fails to include any guidance in the intrinsic record of the patent allowing a person of ordinary skill in the art to measure and determine the pull strength (or pull force) of magnets with reasonable certainty. Filing 76 at 31. HBL argues that the specification does not provide any example of a method to determine pull strength or any explanation of "normal outdoor conditions." Filing 76 at 31. HBL points out that testing "pull force" may depend on such variables as the angle of the force, tipping or pulling, and whether there are coats of paint or other coverings on the ferrous surface. Filing 76 at 32. As to the '264 Patent, HBL argues that there is nothing in the intrinsic record that provides guidance to a person of ordinary skill in the art to determine the scope of "sufficient pull force to hold said light fixture assembly to a ferrous object." Filing 76 at 33.

Lite-Netics argues that it is premature to decide whether the claims of the Asserted Patents are indefinite because the Court has not yet conducted a *Markman* hearing to determine claim construction. Filing 79 at 45. Lite-Netics asserts that in cases where courts have decided to determine indefiniteness, the parties had already briefed and argued their positions on claim constructions. Filing 79 at 45. Lite-Netics also asserts that the pull strength limitations provide reasonable certainty to a person of ordinary skill in the art because the pull strength limitations recite a quantifiable amount of pounds of force and the subject matter of the patent is decorative lights. Filing 79 at 46. Finally, because Lite-Netics asserts that the Court must construe the patent claims as valid, the Court should also conclude that a person of ordinary skill in the art would understand how to measure pull strength of a magnet. Filing 79 at 47.

In reply, HBL argues that HBL is not challenging the definiteness of "five" in "five pounds" of pull strength but challenging the indefiniteness of the method for measuring pull

19

strength. Filing 80 at 1–2. HBL argues that Lite-Netics has not pointed to anything in the intrinsic record that would resolve the points of confusion and uncertainty for a person of ordinary skill in the art. Filing 80 at 2.

      2.    *Indefiniteness Cannot Be Determined on the Face of the First Amended Complaint in this Case*

The "definiteness" requirement for patents is codified in 35 U.S.C. § 112, which provides that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1260 (Fed. Cir. 2014) (quoting 35 U.S.C. § 112(b)). "A 'patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'" *Grace Instrument Indus., LLC v. Chandler Instruments Co., LLC*, 57 F.4th 1001, 1008 (Fed. Cir. 2023) (quoting *Nautilus, Inc. v. Biosig Instruments, Inc*., 572 U.S. 898, 901 (2014)). The indefiniteness issue in a case may be intertwined with claim construction. *Media Rts. Techs., Inc. v. Cap. One Fin. Corp*., 800 F.3d 1366, 1371 (Fed. Cir. 2015). Indeed, a determination on indefiniteness "is drawn from the court's performance of its duty as the construer of patent claims." *Biomedino, LLC v. Waters Techs. Corp*., 490 F.3d 946, 949 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

      "[A] party challenging patent validity on indefiniteness grounds carries the burden of proof." *Bosch Auto. Serv. Sols., LLC v. Matal*, 878 F.3d 1027, 1040 (Fed. Cir. 2017), as amended on reh'g in part (Mar. 15, 2018). Consequently, "[a]ny fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence." *Grace Instrument Indus.*, 57 F.4th at 1008 (internal quotation marks and citation omitted). The "ultimate conclusion" that a claim is indefinite is a legal one, however. *Id.*

HBL has not cited and the Court has not found a single case finding a patent claim indefinite on a Rule 12(b)(6) motion to dismiss for failure to state a claim, at least not for a device or method patent of the kinds claimed in the Asserted Patents. HBL does assert that indefiniteness is amenable to determination at the pleading stage, citing *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1369 (Fed. Cir. 2015), and *In re TLI Commc'ns LLC Patent Litig.*, 87 F. Supp. 3d 773, 782 (E.D. Va. 2015). The former case involved judgment on the pleadings based on indefiniteness only after a *Markman* hearing. *Media Rights Techs.*, 800 F.3d at 1369. The latter case dismissed a claim of infringement of a means-plus-function patent as indefinite under 35 U.S.C. § 112(f), which involves different requirements to establish definiteness. *In re TLI Commc'ns*, 87 F. Supp. 3d at 798-99. Neither addresses the situation here.

There are two main reasons that the Court finds that indefiniteness cannot be determined on the face of the First Amended Complaint in this case. The first is that the Court concludes that the indefiniteness issue in this case is intertwined with as well as drawn from the Court's duty to perform claim construction. *Media Rts. Techs., Inc.*, 800 F.3d at 1371; *Biomedino, LLC*, 490 F.3d at 949. Although Lite-Netics has perhaps done a poor job of articulating what discovery and ultimate claim construction at a *Markman* hearing might show, the Court concludes that it is inappropriate to conduct any further claim construction at this preliminary stage of the proceedings, where claim construction may turn on factual matters. For example, it is not within the realm of common knowledge what methods or variables may be involved in measuring pull strength or what methods or variables are pertinent in this case, simply based on the field of the invention, although discovery may demonstrate that a person of ordinary skill in the art would have such knowledge.

The second reason is that the party challenging patent validity on indefiniteness grounds, here HBL, carries the burden of proof. *Bosch Auto. Serv. Sols.*, 878 F.3d at 1040. Furthermore, it must carry the burden to prove "[a]ny fact critical to a holding on indefiniteness . . . by clear and convincing evidence." *Grace Instrument Indus.*, 57 F.4th at 1008. At this point in the litigation, there is neither a counterclaim of patent invalidity for indefiniteness nor assertion of an affirmative defense of patent invalidity based on indefiniteness properly before the Court. Perhaps more importantly, the Court does not find HBL's present arguments of indefiniteness sufficient to meet its burden in the absence of a complete record including expert testimony.

Therefore, the part of HBL's Renewed Motion to Dismiss based on indefiniteness of the Asserted Patents is denied.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that HBL's Renewed Rule 12(b)(6) Motion to Dismiss Lite-Netics's Amended Complaint, Filing 75, is denied in its entirety.


Dated this 26th day of June, 2023.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge
