IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

LITE-NETICS, LLC,

                    Plaintiff,

          vs.

NU TSAI CAPITAL LLC,

                    Defendant.

**8:22CV314**

**MEMORANDUM AND ORDER
REGARDING PLAINTIFF'S MOTION
TO CERTIFY JUDGMENT AND STAY
REMAINING COUNTERCLAIMS
PENDING APPEAL**

This case involves claims by plaintiff/counterdefendant Lite-Netics, LLC, (Lite-Netics) of infringement of its patents for magnetic holiday light fixtures by defendant/counterclaimant Nu Tsai Capital LLC, d/b/a Holiday Bright Lights (HBL). Filing 31. It also involves HBL's counterclaims premised primarily on allegations that Lite-Netics made "objectively baseless allegations" to HBL's clients and customers that HBL was infringing Lite-Netics's patents. Filing 82. This Court entered a Memorandum and Order on Claim Construction in which the Court *inter alia* declared both of Lite-Netics's patents-in-suit (the Asserted Patents) invalid. This case is now before the Court on Lite-Netics's Motion to Certify Judgment and Stay Remaining Counterclaims Pending Appeal. Filing 157. For the reasons stated below, Lite-Netics's Motion is denied.

## I.  INTRODUCTION

This case has already generated several decisions in this Court and one in the Federal Circuit Court of Appeals.[1] Thus, the statement of the factual and procedural background to the present ruling can be comparatively brief.

---

[1] The decisions, in chronological order, are the following: *Lite-Netics, LLC v. Nu Tsai Cap. LLC*, No. 8:22CV314, 2022 WL 6151898 (D. Neb. Oct. 7, 2022) (memorandum and order regarding defendant/counterclaimant's motion for temporary restraining order and temporary restraining order); *Lite-Netics, LLC v. Nu Tsai Cap. LLC*, 637 F. Supp. 3d 668 (D. Neb. 2022) (memorandum and order regarding defendant/counterclaimant's motion for preliminary injunction

The factual background pertinent here begins with Lite-Netics's allegation that it sells magnetic light strands used to illuminate homes and businesses during the holidays pursuant to U.S. Patent No. 7,549,779 (the '779 Patent) and U.S. Patent No. 8,128,264 (the '264 Patent) (collectively, the Asserted Patents). Filing 31 at 1 (¶ 2), 3 (¶ 10). Notwithstanding Lite-Netics's characterization, both Asserted Patents describe the invention as "a light fixture assembly," rather than a light strand. Filing 128-1 at 2 ('779 Patent, abstract); Filing 128-2 at 2 ('264 Patent, abstract). The '264 Patent is identified as a "[c]ontinuation-in-part of . . . Pat. No. 7,549,779." Filing 128-2 at 2. The most important facet of each invention is that "[a] neodymium disc [or strong] magnet is embedded in the base [of the light fixture assembly], thereby allowing the assembly to be mounted magnetically to metal surfaces." Filing 128-1 at 2; Filing 128-2 at 2. Lite-Netics alleges that HBL is marketing two products that infringe the Asserted Patents: a "Magnetic Cord" and a "Magnetic Clip." Filing 31 at 6 (¶ 21).

Lite-Netics's First Amended Complaint, Filing 31, remains Lite-Netics's operative pleading. Count I of Lite-Netics's First Amended Complaint asserted direct infringement, inducing infringement, and contributing to infringement by HBL of one or more claims of the '779 Patent. Filing 31 at 8-10 (¶¶ 27–39). Count II of its First Amended Complaint asserted direct infringement, inducing infringement, and contributing to infringement by HBL of one or more claims of the '264 Patent. Filing 31 at 10–12 (¶¶ 40–52). One of the principal differences between the original Complaint and the First Amended Complaint is that the latter expressly alleged that HBL's direct

---

and preliminary injunction), amended, No. 8:22CV314, 2022 WL 16798803 (D. Neb. Nov. 8, 2022), and vacated and remanded, 60 F.4th 1335 (Fed. Cir. 2023); *Lite-Netics, LLC v. Nu Tsai Cap. LLC*, No. 8:22CV314, 2022 WL 18106436 (D. Neb. Nov. 10, 2022) (memorandum and order regarding plaintiff/counterdefendant's motion to stay preliminary injunction pending appeal); *Lite-Netics, LLC v. Nu Tsai CapitaL LLC*, 678 F. Supp. 3d 1115 (D. Neb. 2023) (memorandum and order regarding defendants' motion to dismiss); *Lite-Netics, LLC v. Nu Tsai Cap. LLC*, No. 8:22CV314, 2023 WL 7166155 (D. Neb. Oct. 31, 2023) (memorandum and order regarding plaintiff's motion to dismiss counterclaims); *Lite-Netics, LLC v. Nu Tsai Cap. LLC*, No. 8:22CV314, 2024 WL 4136271, at *1 (D. Neb. Sept. 10, 2024) (memorandum and order on claim construction).

infringement was "under literal infringement, the doctrine of equivalents, or both," where its original Complaint contained no allegations of infringement under the doctrine of equivalents. Filing 31 at 8 (¶ 29); Filing 31 at 10 (¶ 42).

In HBL's Answer to Amended Complaint and Counterclaims, HBL reiterated five of its original counterclaims. Count I of the Amended Counterclaims alleges a federal claim of unfair competition and false advertising under 15 U.S.C. § 1125(a), Filing 82 at 15; Count II alleges a claim of unfair competition under the Nebraska Consumer Protection Act (NCPA), Neb. Rev. Stat. § 59-1602, Filing 82 at 16; Count III alleges a claim of deceptive trade practices in violation of the Nebraska Uniform Deceptive Trade Practices Act (NUDTPA), Neb. Rev. Stat. §§ 87-302, 87-303, Filing 82 at 17; Count IV alleges a claim of tortious interference with business relations and prospective business relations, Filing 82 at 18; and Count V alleges a claim of defamation, Filing 82 at 20. As in HBL's original Counterclaim, the first five counterclaims in the Amended Counterclaim are premised on allegations that Lite-Netics made "objectively baseless allegations" to HBL's clients and customers "that HBL was infringing the Asserted Patents and/or had 'copied' Lite-Netics and/or [that HBL's clients] would have to respond to HBL-product-infringement assertions as . . . added defendant[s]." Filing 82 at 15 (¶ 29), 16 (¶ 38), 18 (¶ 45), 18–19 (¶ 51), and 20 (¶ 60). Previously pleaded Count VI was omitted.

HBL's Answer to Amended Complaint and Counterclaims included several new counterclaims, although none of them remain at issue. Count VII sought declaratory judgment of non-infringement of Lite-Netics's '779 patent. Filing 82 at 21. Count VIII sought declaratory judgment of non-infringement of Lite-Netics's '264 patent. Filing 82 at 21. Count IX sought declaratory judgment of invalidity of Lite-Netics's '779 patent. Filing 82 at 22. Count X sought declaratory judgment of invalidity of Lite-Netics's '264 patent. Filing 82 at 22. Count XI sought

declaratory judgment of equitable estoppel as to Lite-Netics's '779 patent. Filing 82 at 23. Count XII (improperly numbered as another Count XI) sought declaratory judgment of equitable estoppel as to Lite-Netics's '264 patent. Filing 82 at 24.

Eventually, the Court held a *Markman* hearing[2] for construction of the disputed terms of the Asserted Patents and resolution of HBL's invalidity challenges to the Asserted Patents. Thereafter, the Court entered a 121-page Memorandum and Order on Claim Construction in which the Court construed all the patent claim terms at issue. Filing 154. The Court also determined that all claims of Lite-Netics's Asserted Patents are invalid as a matter of law; dismissed as moot Lite-Netics's claims of patent infringement; dismissed as moot HBL's Counterclaims seeking declaratory judgment of non-infringement; and entered declaratory judgment of invalidity of the Asserted Patents on HBL's Counterclaims. Filing 154 at 120–121. The Court stated that this case would proceed only on HBL's Counterclaims I through V, XI, and XII. Filing 154 at 121. However, HBL has indicated that it is no longer pursuing Counterclaims XI and XII. Filing 156 at 2 n.2.

In the Motion to Certify Judgment and Stay Remaining Counterclaims Pending Appeal now before the Court, Lite-Netics asks the Court to certify the Court's claim construction order as a final judgment under Federal Rule of Civil Procedure 54(b) and to stay HBL's remaining counterclaims pending appeal. Filing 157 at 1. HBL vehemently opposes the Motion. Filing 159.

---

[2] A "*Markman* hearing" is "a hearing to determine the proper construction of the patent's claims." *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 905–06 (2014) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), as holding that claim construction is a matter of law reserved for court decision).

## II. LEGAL ANALYSIS

### A. Applicable Standards

Lite-Netics seeks entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b). Thus, the Court begins its analysis with the standards applicable to a Rule 54(b) judgment.

#### 1.    Rule 54(b)

Federal Rule of Civil Procedure 54 provides in pertinent part as follows:

> **(b) Judgment on Multiple Claims or Involving Multiple Parties.** When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Application of the rule requires some further elaboration, but the first question in this patent case is whether the standards for application of the rule are controlled by the law of the regional circuit—here, the Eighth Circuit—or the law of the Federal Circuit.

#### 2.    Federal Circuit Law Applies to Rule 54(b) Certification

Lite-Netics appears to assume that Eighth Circuit law applies to the determination of whether this Court should certify the judgment on the construction of claim terms and invalidity of the Asserted Patents as "final" pursuant to Federal Rule of Civil Procedure 54(b). Filing 158 (citing *Downing v. Riceland Foods, Inc.*, 810 F.3d 580, 585 (8th Cir. 2016)). HBL argues that Federal Circuit law applies to Rule 54(b) "just reason for delay" questions rather than regional circuit law. Filing 159 at 6 n.2 (citing *iLor, LLC v. Google, Inc.*, 550 F.3d 1067, 1072 (Fed. Cir. 2008)). Indeed, HBL argues, "By ignoring the correct circuit law, Lite-Netics fails outright in its burden as movant." Filing 159 at 6 n.2. The Court is reluctant to deny Lite-Netics's Motion on the

ground that Lite-Netics relied on the "wrong" circuit's law, although the Court finds it troubling that Lite-Netics does not address the issue of controlling law in its Reply after the issue was raised by HBL. *See generally* Filing 160. The Court turns instead to answering the question of what circuit's law is controlling.

In *iLor*, the Federal Circuit stated, "Whether an order is sufficient to confer appellate jurisdiction under Rule 54(b) is a question of Federal Circuit law." 550 F.3d at 1072 (citing *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 830 (Fed. Cir. 2003)). Similarly, in *Storage Technology Corporation*, the Federal Circuit made clear that it applies Federal Circuit law "instead of regional circuit law to issues involving Rule 54(b) certification and our appellate jurisdiction." 329 F.3d at 830. Thus, the Court's analysis will be guided by Federal Circuit standards for Rule 54(b) certification.

### 3.    Federal Circuit Standards

As the Federal Circuit has explained,

> Absent extraordinary circumstances, for a district court judgment to be appealable to this court under 28 U.S.C. § 1295(a)(1), the judgment must resolve all claims and counterclaims or make an express determination under Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delay. *SafeTCare Mfg., Inc. v. Tele-Made, Inc.*, 497 F.3d 1262, 1267 (Fed. Cir. 2007); *see also Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.*, 476 F.3d 1329, 1330 (Fed. Cir. 2007) (concluding no final judgment, and thus a lack of jurisdiction, where the defendants' counterclaims were never dismissed and thus remained extant).

*Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1365 (Fed. Cir. 2021). "Rule 54(b) was implemented to specifically 'avoid the possible injustice of delay[ing] judgment on a distinctly separate claim [pending] adjudication of the entire case.'" *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 841 F.3d 1334, 1347 (Fed. Cir. 2016) (quoting *Gelboim v. Bank of Am. Corp.* 574 U.S. 405, 409 (2015)). Thus, "Rule 54(b) allows a district court to act as a 'dispatcher' and 'determine, in the first instance, the appropriate time when each "final decision" upon "one or

more but less than all" of the claims in a multiple claims action is ready for appeal.'" *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445 F.3d 1348, 1350–51 (Fed. Cir. 2006) (quoting *Pause Tech. LLC, v. TiVo Inc.*, 401 F.3d 1290, 1294 n.2 (Fed. Cir. 2005)).[3]

More specifically, the Federal Circuit has explained,

There are three prerequisites for invoking Rule 54(b): (1) multiple claims for relief or multiple parties must be involved; (2) at least one claim or the rights and liabilities of at least one party must be finally decided; and (3) the district court must find that there is no just reason for delaying an appeal. 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2656 (3d ed. 2016).

*Alfred E. Mann Found. for Sci. Rsch.*, 841 F.3d at 1347. The Court will address in more detail below the standards applicable to each prerequisite in its consideration of whether the prerequisites have been satisfied in this case.

## B. Rule 54(b) Certification Is Not Warranted

The Court's consideration of the three prerequisites for certification stated in *Alfred E. Mann Foundation for Scientific Research*, 841 F.3d at 1347, leads the Court to conclude that Rule 54(b) certification of the Court's Memorandum and Order on Claim Construction is not warranted. The Court will explain this conclusion by considering each of the three prerequisites in turn.

### 1. The Case Involves Multiple Claims

As to the first prerequisite, Rule 54(b) itself states that it applies "[w]hen an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved." Fed. R. Civ. P. 54(b). In such a case, "the court

---

[3] There appears to be some question about whether a Rule 54(b) determination is reviewed for abuse of discretion or is "fully reviewable." *Compare Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1335 (Fed. Cir. 2017) (stating that the Federal Circuit "review[s] the district court's decision to certify a partial final judgment under Rule 54(b) for an abuse of discretion" (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437 (1956))), *with Alfred E. Mann Found. for Sci. Rsch.*, 841 F.3d at 1347 (explaining that because "the district court has no discretion to authorize an appeal when Rule 54(b) does not apply, its decision that the requirements of the rule have been met is fully reviewable by an appellate court" (quoting 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2655 (3d ed. 2016))).

may direct entry of a final judgment as to one or more, but fewer than all, claims or parties" if the other prerequisites are met. Fed. R. Civ. P. 54(b). To put it the other way around, "Rule 54(b) applies 'only when additional claims, counterclaims, or third-party claims are left unadjudicated.'" *Ultra-Precision Mfg. Ltd. v. Ford Motor Co.*, 338 F.3d 1353, 1357 (Fed. Cir. 2003) (quoting *W.L. Gore & Assocs. v. Int'l Med. Prosthetics Research Assocs., Inc.*, 975 F.2d 858, 862 (Fed. Cir. 1992)).

This case undeniably involved both Lite-Netics's claims of infringement, Filing 31, and still involves several of HBL's counterclaims, Filing 82, which remain unadjudicated. *See Ultra-Precision Mfg. Ltd.*, 338 F.3d at 1357 (explaining that Rule 54(b) only applies when claims are left "unadjudicated"). Specifically, Counts I through V of HBL's Counterclaims remain pending. *See* Filing 154 at 121 (stating that Counts I through V, XI, and XII of HBL's Counterclaims remain pending); Filing 156 at 2 n.2 (withdrawing HBL's Counterclaims in Counts XI and XII). Thus, this case satisfies the first prerequisite for Rule 54(b) certification. Fed. R. Civ. P. 54(b); *Ultra-Precision Mfg. Ltd.*, 338 F.3d at 1357.

### 2. The Court Made Final Judgments on Claim Construction, Invalidity, and Mootness of the Infringement Claims

As to the second prerequisite, finality as to the claim or party, "Rule 54(b) 'does not relax the finality required of each decision, as an individual claim.'" *Ultra-Precision Mfg. Ltd.*, 338 F.3d at 1357 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435 (1956)). "A judgment is not final for purposes of Rule 54(b) unless it is an 'ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* (quoting *Sears, Roebuck & Co.*, 351 U.S. at 435). The Federal Circuit has explained,

> The standard for finality under Rule 54(b) is analogous to the standard under 28 U.S.C. § 1291 (or 28 U.S.C. § 1295). [*Sears, Roebuck & Co.*], [351 U.S.] at 438, 76 S.Ct. 895 ("[Rule 54(b)] scrupulously recognizes the statutory requirement of a 'final decision' under § 1291 as a basic requirement for an appeal to the Court of

Appeals. It merely administers that requirement in a practical manner in multiple claims actions and does so by rule instead of by judicial decision."); *see also* Wright, *Federal Practice and Procedure* § 2656.

*Alfred E. Mann Found. for Sci. Rsch.*, 841 F.3d at 1347. For example, "The Supreme Court has explained that judgments where assessment of damages or awarding of other relief remains to be resolved have never been considered to be 'final' for purposes of Rule 54(b)." *Id.* (cleaned up) (quoting *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976)).

This Court's Memorandum and Order on Claim Construction was an "ultimate disposition" of more than one individual claim in the course of this multiple claims action. *Ultra-Precision Mfg. Ltd.*, 338 F.3d at 1357 (quoting *Sears, Roebuck & Co.*, 351 U.S. 435). It was this Court's ultimate disposition on construction of the pertinent patent claim terms and invalidity of the Asserted Patents. Filing 154 at 120. Also, as a result of the Court's claim constructions, the Court made an "ultimate disposition" of Lite-Netics's claims of patent infringement, dismissing them as moot, because an invalid patent cannot be infringed. Filing 154 at 121. For the same reason, the Court dismissed as moot HBL's Counterclaims seeking declaratory judgment of non-infringement. Filing 154 at 121. Finally, the Court entered declaratory judgment of invalidity of the Asserted Patents on HBL's Counterclaims. Filing 154 at 121. None of these determinations required an assessment of damages or the award of any relief other than the declaratory relief that the Court awarded. *See Alfred E. Mann Found. for Sci. Rsch.*, 841 F.3d at 1347 (explaining that a relief is not final for purposes of Rule 54(b) certification if damages or other relief remains to be awarded). Thus, none of these matters will be considered further in this Court unless they are remanded after an inevitable appeal. *See* Filing 158 at 6 ("Regardless of whether this Motion is granted, Plaintiff will appeal the Court's finding of patent invalidity to the Federal Circuit: either now or later.").

Nevertheless, the extent to which the infringement/non-infringement claims have been adjudicated is limited. The only adjudication of those claims so far is that they are moot in light of

the invalidity of the Asserted Patents. Thus, if the Asserted Patents are found to be valid on appeal, the issues of infringement/non-infringement will be reanimated in their entirety for adjudication, by summary judgment and/or by jury trial. In those circumstances, extensive further proceedings on infringement/non-infringement would be required in this Court and more than likely in the Federal Circuit.

3.    *There Are Just Reasons for Delaying an Appeal*

The third prerequisite for Rule 54(b) certification is that "there is no just reason for delaying an appeal." *Alfred E. Mann Found. for Sci. Rsch.*, 841 F.3d at 1347; Fed. R. Civ. P. 54(b) (the district court may certify a judgment for immediate appeal "only if the court expressly determines that there is no just reason for delay"). "[T]he bare recitation of the 'no just reason for delay' standard of Rule 54(b) is not sufficient, by itself, to properly certify an issue for immediate appeal." *iLOR, LLC*, 550 F.3d at 1072 (noting that this was the "consensus view" and adopting it (citing 10 James Wm. Moore et al., *Moore's Federal Practice* § 54.23[2] (3d ed. 2008)). "Rather, it must be apparent, either from the district court's order or from the record itself, that there is a sound reason to justify departure from the general rule that all issues decided by the district court should be resolved in a single appeal of a final judgment." *Id.*

The Court will consider below factors relevant to the "no just reason for delay" prerequisite. However, to weigh those factors properly, the Court must first address the parties' misapprehensions about the extent to which remaining claims are unadjudicated because those misapprehensions permeate their arguments on the "no just reason for delay" prerequisite.

10

a.  The Parties' Misapprehensions about What Remains to be Adjudicated

i.  Lite-Netics's Misapprehensions

Lite-Netics is correct that "[t]he Court's claim construction order (Filing No. 154) determined that all of the claims of the Asserted Patents are invalid, and that Plaintiff's infringement allegations—therefore—are all moot." Filing 158 at 1. Lite-Netics is also correct that "[a]ll that remains in this case are Defendant's counterclaims. . . ." Filing 158 at 1. Where Lite-Netics goes astray is by asserting (1) that all the remaining counterclaims "depend on a determination of whether Plaintiff's infringement position is baseless," and (2) that "the Federal Circuit has already noted that [Lite-Netics's] claim construction positions are reasonable." Filing 158 at 1–2. Based on these erroneous assertions, Lite-Netics argues that "allowing this case to continue to trial will waste resources of the Court and the parties, particularly if the invalidity ruling by the Court is reversed by the Federal Circuit." Filing 158 at 2.

Contrary to Lite-Netics's assertions, the remaining counterclaims are based only partly not solely on the objective baselessness of Lite-Netics's allegations of infringement in its statements to HBL's customers. As HBL points out, Lite-Netics's allegedly tortious statements also included allegations that HBL "copied" Lite-Netics's product and that HBL's customers would be joined in the infringement lawsuit if they continued to buy from HBL. Filing 159 at 7–8; *see, e.g.*, Filing 82 at 15 (¶ 29) (alleging unfair competition based on Lite-Netics's "objectively baseless" statements to HBL's clients and customers "that HBL was infringing the Asserted Patents and/or had 'copied' Lite-Netics and/or would have to respond to HBL-product-infringement assertions as an added defendant. . . ."). There has been no determination in this case by either this Court or the Federal Circuit that an allegation of "copying" is synonymous with an allegation of "infringement" or that any infringement is necessarily the result of "copying" Lite-Netics's product. *See, e.g., Liqwd, Inc.*

11

*v. L'Oreal USA, Inc*., 941 F.3d 1133, 1137 (Fed. Cir. 2019) ("In *Iron Grip Barbell [v. USA Sports, Inc*., 392 F.3d 1317* (Fed. Cir. 2004),] we stated that 'copying requires the replication of a *specific product*.' *Id*. [at 1325] (emphasis added). In that case, however, we emphasized that a 'competing product that arguably fa[l]ls within the scope of a patent' is not necessarily evidence of copying. *Id*. This is to avoid collapsing the separate infringement and copying inquiries into a single analysis."). Also, even a reasonable assertion of infringement does not allow a patentholder to add customers or retailers of the alleged infringer's products to the infringement lawsuit. Instead, the patentholder must sue the alleged infringer first and separately from customers or retailers. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 214). Thus, there are allegations of objectively baseless statements that are separate from the statements about infringement and that neither this Court nor the Federal Circuit has addressed.

Furthermore, this Court previously rejected Lite-Netics's argument that the Federal Circuit's decision on interlocutory appeal of the preliminary injunction bars HBL's counterclaims because the Federal Circuit had purportedly found Lite-Netics's claim constructions were reasonable. Filing 158 at 2. In its Memorandum and Order Regarding Plaintiff's Motion to Dismiss Counterclaims this Court concluded that the Federal Circuit's decision on interlocutory appeal of the preliminary injunction did not bar HBL's counterclaims. Filing 92 at 9. The Court explained that the Federal Circuit's decision is not law of the case. Filing 92 at 11. This Court found that there was no doubt that the Federal Circuit did not believe that its decision finally resolved all the issues raised by the two counterclaims that formed the basis for the preliminary injunction. Instead, the Federal Circuit determined that it would vacate the injunction if it found any part of the injunction was an abuse of discretion, and the Federal Circuit considered "objective baselessness" of certain allegations of infringement only as to the '779 patent but not as to the '264 patent. Filing

92 at 11 (citing *Lite-Netics*, 60 F.4th at 1344–45 and n.2). This Court also pointed out that the Federal Circuit made clear that its decision was based on the available record. Filing 92 at 12–14. The Court therefore reiterates its prior conclusion "that the Federal Circuit's decision was not— and was not intended to be—the law of the case as to any determination on interlocutory appeal." Filing 92 at 14.

In short, the Federal Circuit did not determine that all of Lite-Netics's claim construction positions were reasonable. Rather, the Federal Circuit "h[e]ld that the district court abused its discretion at least in finding that Lite-Netics's infringement allegations with respect to the '779 patent are objectively baseless. . . . We need not and do not address other issues." *Lite-Netics*, 60 F.4th at 1344. The Federal Circuit also did not hold that each and every allegation that Lite-Netics made in its communications to HBL's customers was reasonable because the Federal Circuit never addressed the reasonableness of the allegation that HBL "copied" Lite-Netics's product or the allegation that customers could be added as defendants in the litigation. Thus, contrary to Lite-Netics's assertions, allowing this case to continue to trial on the remaining counterclaims will not necessarily waste resources of the Court and the parties where much about the counterclaims— including the reasonableness or objective baselessness of Lite-Netics's allegations of infringement—remains unresolved and a verdict in HBL's favor on those counterclaims would not necessarily be undone by a reversal on appeal of this Court's invalidity determinations.

### ii.  HBL's Misapprehensions

HBL argues that falsity of at least the "infringer" label is now proved under the law of the case. Filing 159 at 2. This is so, HBL argues, because an invalid patent cannot be infringed, and HBL told Lite-Netics before Lite-Netics filed suit that the Asserted Patents were invalid for the reasons that the Court later found. Filing 159 at 3. HBL argues further that the '264 Patent was not

infringed, for example, based on a construction of the "magnet does not protrude outside of said base" that the Court later adopted. Filing 159 at 3.

The Court does not agree with HBL's argument that "[f]alsity of at least the 'infringer' label [in Lite-Netics's allegedly tortious statements] is now proved under the law of the case," because this Court found that the Asserted Patents are invalid and thus cannot be infringed. Filing 159 at 2–3. Contrary to HBL's assertions, on the interlocutory appeal in this case, the Federal Circuit explained that the question on HBL's counterclaims is not whether Lite-Netics's statements alleging infringement were false but whether they were "objectively baseless." *Lite-Netics*, 60 F.4th at 1343. As the Federal Circuit explained, "A patent-infringement allegation is objectively baseless only if no reasonable litigant could realistically expect success on the merits." *Id.* The Federal Circuit explicitly stated, "An incorrect allegation of patent infringement is not necessarily objectively baseless." *Id.* at 1344 (adding, "Indeed, a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights even though he may misconceive what those rights are." (internal quotation marks and citation omitted)). Thus, even if the Court's invalidity ruling means that infringement was not possible and that allegations of infringement were therefore false, the key element of "objective baselessness" remains unadjudicated.

Also, even if HBL told Lite-Netics before Lite-Netics filed suit that the Asserted Patents were invalid for the reasons that this Court later found the Asserted Patents were invalid and not infringed based on construction of claim terms this Court later adopted, it is not clear how this Court's later determinations establish the objective baselessness of Lite-Netics's allegedly tortious statements at the time they were made. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1350 (Fed. Cir. 2014) (finding that infringement allegations were

not objectively baseless at the time they were made). Thus, contrary to HBL's contentions, HBL's defamation and related torts are not "all but established as law of the case." Filing 159 at 2. Much remains to be adjudicated on those counterclaims.

Where HBL stands on better ground is with its assertion that even if the Federal Circuit were to overturn this Court's determination of invalidity of the Asserted Patents, that would not necessarily dispose of HBL's counterclaims, because the counterclaims are not based solely on the objective baselessness of allegations of infringement of valid patents. Instead, as mentioned above, those counterclaims are also based on Lite-Netics's allegations that HBL "copied" Lite-Netics's product and that HBL's customers would be joined in the infringement lawsuit if they continued to buy from HBL. Filing 159 at 7–8. Again, in the Court's view, the reasonableness or baselessness of those allegations at the time they were made does not depend upon later judicial determinations of infringement or invalidity. *See Content Extraction*, 776 F.3d at 1350. At the same time, no further proceedings on the remaining counterclaims will have any impact on the invalidity matters already disposed of.

With this clearer picture of the extent to which remaining claims are unadjudicated, the Court turns to consideration of factors relevant to the "no just reason for delay" prerequisite.

b. The Relationship Between Adjudicated and Unadjudicated Claims

An important consideration when determining whether there is "no just reason for delay" is "the extent to which the existence of [the alleged infringer's] counterclaims affect[s] the analysis." *Intell. Ventures I LLC*, 850 F.3d at 1336. The parties have very different views on whether the relationship between the adjudicated and unadjudicated claims weighs in favor of or against certification in this case.

i.   The Parties' Arguments

Lite-Netics argues that certification will allow the parties to gauge more accurately the value of potential settlement unobscured by uncertainty of an appeal on invalidity. Filing 158 at 7. Lite-Netics also asserts that the counterclaims are legally and factually distinct from claim construction. Filing 158 at 7–8. Thus, Lite-Netics argues that there is no possibility that the need for appellate review of claim construction or invalidity will be mooted by future developments in this Court on the counterclaims even though the counterclaims depend on issues of invalidity. Filing 158 at 8. Next, Lite-Netics asserts that there is no possibility that the appellate court would have to consider validity issues a second time if immediate appeal is granted. Filing 158 at 8–9. Lite-Netics argues that refusal to grant its Motion could result in repeated litigation of HBL's counterclaims because the counterclaims are founded on a determination of non-infringement and/or invalidity. Filing 158 at 9.

HBL points out that Lite-Netics's arguments that there is no just reason for delay assume that an immediate appeal will be resolved in Lite-Netics's favor, but that this Court is entitled to presume that its rulings are correct. Filing 159 at 5. HBL also argues that the appellate court would benefit from viewing Lite-Netics's conduct as a whole, which requires completing the case before a first appeal. Filing 159 at 6. HBL also asserts that its "objective baselessness" claims were not limited to Lite-Netics's infringement allegations so that a reversal on invalidity would not necessarily determine the results on the counterclaims. Filing 159 at 7–8. HBL argues that there is no scenario in which an early appellate disposition of invalidity issues avoids adjudication of the counterclaims. Filing 159 at 8. HBL argues that the overlap of facts between the counterclaims and the invalidity determination is "profound," as the patents and their invalidity must be explored to prove the "objective baselessness" of Lite-Netics's infringement allegations. Filing 159 at 9.

HBL argues that a piecemeal appeal will require the appellate court to acquaint itself at least twice with the particulars of Lite-Netics's patents. Filing 159 at 10.

In reply, Lite-Netics contends that if the Federal Circuit reverses this Court's invalidity determination only after a trial of HBL's counterclaims, those counterclaims will need to be retried in the context of patent validity, which would be a significant waste of party and Court resources. Filing 160 at 2. Lite-Netics reiterates that there is no just reason to delay the appeal of the invalidity ruling because a determination on the counterclaims would have no bearing on patent invalidity, even if invalidity affects the strength of the counterclaims. Filing 160 at 5.

### ii. The Relationship Between Claims Does Not Support Certification

In deciding whether there is "no just reason for delay," this Court should consider "the extent to which the existence of [the alleged infringer's] counterclaims affect[s] the analysis." *Intell. Ventures I LLC*, 850 F.3d at 1336. More specifically, the court must consider "the relationship between the adjudicated and [the] unadjudicated claims." *Id.* (quoting *Braswell Shipyards, Inc. v. Beazer E., Inc.*, 2 F.3d 1331, 1335–36 (4th Cir. 1993)). However, "the mere existence of some factual overlap between the parties' claims and counterclaims does not necessarily lead to the conclusion that the district court abused its discretion" in granting Rule 54(b) certification. *Id.* Rather, the Court must consider such issues as whether the scope of the counterclaims "transcends issues of mere infringement" such that a "tenuous relationship between the claims on appeal and counterclaims that remain" will warrant certification for appeal under Rule 54(b). *Id.* On the other hand, the district court may also consider whether certifying part of a case for appeal pursuant to Rule 54(b) "ensure[s] that the [particular ruling in question] [would] be appealed only once." *e.Digital Corp. v. Futurewei Techs., Inc.*, 772 F.3d 723, 727 (Fed. Cir.

2014) (first and second brackets added; third brackets in the original) (quoting the lower court's decision).

The Court begins its analysis by examining "the extent to which the existence of [HBL's] counterclaims affect[s] the analysis" of whether there is no just reason for delay of an appeal of the invalidity of the Asserted Patents, with specific consideration of "the relationship between the adjudicated and [the] unadjudicated claims." *Intell. Ventures I LLC*, 850 F.3d at 1336. The Court agrees with the parties that there is some overlap between the invalidity issues and the counterclaims in that invalidity or validity of the Asserted Patents does have some impact on the strength of the counterclaims. However, "the mere existence of some factual overlap between the parties' claims and counterclaims does not necessarily lead to the conclusion" that certification would be an abuse of discretion. *Id.*

As the Court observed above in § II.B.3.a.ii., notwithstanding the overlap between the claims, no further proceedings on the remaining counterclaims will have any impact on the invalidity matters already disposed of. Nevertheless, this is not a case in which the scope of the counterclaims "transcends issues of mere infringement" or invalidity such that there is such a "tenuous relationship between the claims on appeal and counterclaims that remain" that Rule 54(b) certification is warranted. *Intell. Ventuires I LLC*, 850 F.3d at 1336.

First, this case presents a situation in which the unadjudicated counterclaims could be decided in HBL's favor on issues unrelated to validity before any appeal. Specifically, as explained in § II.B.3.a.i., the unresolved issues on the counterclaims include the reasonableness or objective baselessness of Lite-Netics's allegedly tortious statements about copying and adding customers as defendants. Neither of those issues is dependent on the validity issue that the Court has disposed of, so a verdict for HBL on the counterclaims based on statements about copying and adding

18

customers as defendants would not have to be retried even if the Asserted Patents are later determined to be valid. Thus, allowing this case to continue to trial on the remaining counterclaims before an appeal of invalidity will not necessarily waste resources of the Court and the parties.

Second, this case also presents a situation in which the unadjudicated counterclaims are also based in part on infringement allegations, so that an immediate appeal on invalidity would almost certainly require the Federal Circuit to engage in a second detailed consideration of the Asserted Patents on an appeal of the counterclaims. As observed above in § II.B.3.a.i., the Federal Circuit did not determine that all of Lite-Netics's claim construction positions were reasonable as Lite-Netics asserts, and the Federal Circuit would not make such a determination on a Rule 54(b) appeal of invalidity. Because parts of the counterclaims are based on Lite-Netics allegedly making objectively baseless allegations of infringement, which also could remain viable even if the Asserted Patents are valid, a premature appeal of invalidity would guarantee that the Federal Circuit would have to consider the Asserted Patents in detail a second time on a later appeal of the counterclaims and/or on the infringement claims if the parties filed such appeals. *Cf. e.Digital Corp.*, 772 F.3d at 727 (finding that it is appropriate to consider whether a Rule 54(b) appeal "ensure[s] that the [particular ruling in question] [would] be appealed only once." (quoting the lower court's decision)).

These considerations concerning the relationship between the adjudicated and the unadjudicated claims show that it is not clear that there is no just reason for delay. *Intell. Ventures I LLC*, 850 F.3d at 1336. Instead, these considerations suggest that it is appropriate to follow "the general rule that all issues decided by the district court should be resolved in a single appeal of a final judgment." *iLOR, LLC*, 550 F.3d at 1072.

Lite-Netics is correct that repeated litigation of the counterclaims is possible if the Court does not certify the appeal of the invalidity ruling before trying the counterclaims—one trial of the counterclaims before any appeal and another one after. Filing 158 at 9. Nevertheless, the Court does not find that the possibility of repeated litigation of the counterclaims means that an immediate appeal is appropriate. An appeal of any verdict on the counterclaims appears inevitable, including the possibility of repeated litigation of those claims. The inevitability of such an appeal suggests that it is appropriate to follow "the general rule that all issues decided by the district court should be resolved in a single appeal of a final judgment." *iLOR, LLC*, 550 F.3d at 1072.

Lite-Netics is correct that the Federal Circuit will never have to consider validity a second time if the Court allows a Rule 54(b) appeal of the validity ruling now. Filing 158 at 8–9. On the other hand, whatever determination the Federal Circuit might make on validity of the Asserted Patents in an immediate appeal, the Federal Circuit would certainly have to consider the Asserted Patents in detail a second time in the context of a subsequent appeal of the determination on the counterclaims and/or the infringement claims. *Cf. e.Digital Corp.*, 772 F.3d at 727. This situation again suggests that it is appropriate to follow "the general rule that all issues decided by the district court should be resolved in a single appeal of a final judgment." *iLOR, LLC*, 550 F.3d at 1072.

### c.   The Judicial Administrative Interests and the Equities Involved

The United States Supreme Court has explained that the Rule 54(b) certification power "is largely discretionary, to be exercised in light of judicial administrative interests as well as the equities involved and giving due weight to the historic federal policy against piecemeal appeals." *Reiter v. Cooper*, 507 U.S. 258, 265 (1993) (internal quotation marks and citations omitted). The parties disagree on whether the judicial administrative interests and the equities in this case show that there is no just reason for delay.

i.  The Parties' Arguments

Lite-Netics argues that delay of an appeal resulting from the Court's refusal to grant Rule 54(b) certification would result in unnecessary hardship and injustice. Filing 158 at 4. Lite-Netics asserts that its allegedly tortious statements to HBL's customers cannot be objectively baseless if the patents are found to be valid and infringed. Filing 158 at 6. Lite-Netics also argues that it will be prejudiced by further delay in enforcing its rights if the Court does not certify the appeal. Filing 158 at 7. Finally, Lite-Netics asserts that there is no interest weighing in favor of denying certification. Filing 158 at 7.

HBL argues that the proper administration of justice warrants finishing this case at this time, rather than dispatching it for piecemeal appellate review, which will inevitably result in long delays. Filing 159 at 1. HBL also argues that no disposition on an immediate appeal of invalidity could obviate any of the counterclaims, so that a stay would improperly delay the relief to which HBL is entitled. Filing 159 at 2. More specifically, HBL argues that if the piecemeal appeal of the invalidity judgment results in affirmance, "Lite-Netics will have caused delay for delay's sake," which prejudices HBL by keeping its counterclaims "on the shelf" through a first appeal. Filing 159 at 7. On the other hand, HBL argues that a first appeal after a trial on the counterclaims could result in an early complete disposition of the case, while a Rule 54(b) appeal on invalidity would delay an inevitable trial on the counterclaims and result in a much longer period before complete disposition of the case. Filing 159 at 10. HBL points out that an appeal at any time involves the possibility of remand and trial or retrial of numerous claims. Filing 159 at 10–11. Finally, HBL argues that allowing the normal process to play out to a complete final judgment at the earliest time will promote settlement. Filing 159 at 11.

21

In reply, Lite-Netics contends that HBL's argument that an immediate appeal of invalidity does not serve judicial administrative interests is defeated by the fact that more than tying up loose ends remains to be decided on HBL's counterclaims. Filing 160 at 3.

### ii. The Judicial Administrative Interests and the Equities Involved Weigh Against Piecemeal Appeals

As mentioned above, the Supreme Court explained that the Rule 54(b) certification power is to be exercised in light of "judicial administrative interests as well as the equities involved." *Reiter*, 507 U.S. at 265 (internal quotation marks and citations omitted). The Federal Circuit has likewise stated that the district court "should 'carefully consider[ ] the competing equities'" when deciding whether to make a Rule 54(b) certification. *Jeannette Sheet Glass Corp. v. United States*, 803 F.2d 1576, 1580 (Fed. Cir. 1986) (quoting *Chaparral Communications, Inc. v. Boman Industries, Inc.*, 798 F.2d 456, 459 (Fed. Cir. 1986)). Specifically, the Federal Circuit Court of Appeals recognized that "the knowledge bred of the district court's proximity to the case can be brought to bear on the question of the propriety of immediate review." *Id.* (quoting *Samuel v. University of Pittsburgh*, 506 F.2d 355, 361 (3rd Cir. 1974)).

Lite-Netics's arguments again rely in part on misconceptions identified in § II.B.3.a.i. Lite-Netics asserts that its allegedly tortious statements to HBL's customers cannot be objectively baseless if the patents are found to be valid and infringed. Filing 158 at 6. However, as the Court explained above, HBL's counterclaims are not based solely on objectively baseless allegations of infringement but are also based on Lite-Netics's purportedly objectively baseless allegations of copying and joining customers as defendants. Neither allegations of copying nor allegations about joining customers as defendants are dependent upon whether the patents are found to be valid or infringed. Furthermore, for the reasons explained in § II.B.3.b.ii., the Court rejects Lite-Netics's contention that HBL's argument that an immediate appeal of invalidity does not serve judicial

administrative interests is defeated by the fact that more than tying up loose ends remains to be decided on HBL's counterclaims. Filing 160 at 3.

On the other hand, both parties have legitimate arguments that either granting or denying a Rule 54(b) certification will prejudice one of them. Lite-Netics argues that it will be prejudiced by further delay in enforcing its rights if the Court does not certify an immediate appeal of the invalidity ruling. Filing 158 at 7. HBL argues that if the piecemeal appeal of the invalidity judgment is allowed but results in affirmance, "Lite-Netics will have caused delay for delay's sake," which prejudices HBL by keeping its counterclaims "on the shelf" through a first appeal. Filing 159 at 7. Thus, the Court finds that it must bring to bear its knowledge bred of proximity to the case to decide the question of the propriety of immediate review. *See Jeannette Sheet Glass Corp.*, 803 F.2d at 1580.

Ultimately, the Court is convinced by its knowledge of the issues involved that the judicial administrative interests and the balance of equities warrant proceeding with the case in the usual manner rather than dispatching the case for piecemeal appellate review of invalidity. An immediate appeal of invalidity issues pursuant to Rule 54(b) will likely result in a much longer delay in resolution of all issues in the case than proceeding in the usual manner with a trial on the remaining counterclaims before any appeal. According to the parties' Second Updated Joint Rule 26(f) Report, filed after the Court's claim construction and invalidity ruling, this case could be ready for trial on remaining counterclaims by May 2025, according to HBL, or August 2025, according to Lite-Netics. Filing 156 at 8. Such a trial would inevitably result in an appeal, but that appeal would encompass claim construction and invalidity as well as the verdict on the counterclaims. That appeal would likely take two years, where Filing 159-1 shows the time from filing to oral argument for Federal Circuit appeals of non-injunction district court decisions averages 1.5 years, and some

or several months would likely elapse after oral arguments before an opinion was filed. If such an appeal resulted in complete affirmance, the case would end approximately three years from now after one trial and one appeal.[4]

In contrast, Filing 159-1 shows that a Rule 54(b) appeal before any trial and involving only claim construction and invalidity would likely take two years until an opinion is filed. That appeal could result in affirmance or reversal of invalidity, but it would inevitably require remand for trial requiring at least another six to nine months of preparation. See Filing 156 at 8. If the determination of invalidity is reversed on appeal, that trial would be of the infringement claims and the counterclaims, neither of which would have been previously adjudicated. If the determination of invalidity is affirmed on appeal, that trial would be of the counterclaims only. That trial would also inevitably be followed by at least one more appeal resulting in another delay of two years or more before the case would be fully resolved. This approach presents the likelihood that complete resolution of the case would take more than four years and possibly five years after one trial and two appeals.

In short, following the "general rule" of proceeding to trial of remaining claims and allowing all issues decided by the district court to be resolved in a single appeal of a final judgment presents the possibility of the earliest complete resolution of the case, which would most efficiently use the resources of both the courts and the parties. *iLOR, LLC*, 550 F.3d at 1072. Also, denial of Rule 54(b) certification in this case "give[s] due weight to the historic federal policy against piecemeal appeals." *Reiter*, 507 U.S. at 265.

_____

[4] Of course, the Court recognizes that such an appeal could also result in affirmance of invalidity but reversal and possible remand for retrial of the counterclaims on one or more of the allegedly "objectively baseless" statements, or complete reversal resulting in a remand of at least the infringement claims and possibly the counterclaims.

24

*4.    Summary*

In this case, the Court finds that in light of "the relationship between the adjudicated and [the] unadjudicated claims," *Intell. Ventures I LLC*, 850 F.3d at 1336, including the likelihood that the Federal Circuit would have to consider the Asserted Patents a second time if an immediate appeal of invalidity is allowed, *e.Digital Corp.*, 772 F.3d at 727, it is not apparent that there is a sound reason that justifies departure from the general rule that all issues decided by the district court should be resolved in a single appeal of a final judgment. *iLOR, LLC*, 550 F.3d at 1072. Furthermore, the "judicial administrative interests as well as the equities involved," *Reiter*, 507 U.S. at 265 (internal quotation marks and citations omitted), favor denial of an immediate appeal. Specifically, this case involves prejudice to one party or the other whether or not there is an immediate appeal, the possibility of a complete disposition within the shortest time if the proceedings go forward in the usual manner, and the likelihood that an immediate appeal would actually result in longer delay of the final disposition of the case. Finally, denial of Rule 54(b) certification in this case "give[s] due weight to the historic federal policy against piecemeal appeals." *Reiter*, 507 U.S. at 265. Consequently, the Court concludes that Lite-Netics's Motion to Certify Judgment on invalidity for appeal pursuant to Federal Rule of Civil Procedure 54(b) is denied.

## C.  The Motion for Stay of Counterclaims Pending Appeal

In its Motion, Lite-Netics also asserts that "if the Court rules that the claim construction order is a final judgment on patent validity, the Court should also stay this case pending the result of an appeal." Filing 158 at 2. However, the Court has determined that certification of the claim construction and invalidity order for immediate appeal pursuant to Federal Rule of Civil Procedure 54(b) is not appropriate. Consequently, Lite-Netics's motion for a stay is denied.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED THAT Lite-Netics's Motion to Certify Judgment and Stay Remaining Counterclaims Pending Appeal, Filing 157, is denied in its entirety. This case will proceed on the remaining counterclaims.


Dated this 24th day of February, 2025.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge
